Good morning, Your Honors. My name is Carl Gunn. I'm appearing on behalf of Mr. Ochoa. I'm going to try to reserve two minutes of time for rebuttal, if I may, and I'll try to watch the clock. All right. Your Honors, I'll jump right into it. I think the simplest way to approach this case, which is also consistent with basic principles of statutory construction, is to look at the plain statutory language. 18 U.S.C. 3582c says a court cannot modify a sentence once it has been, quote, imposed, unquote, not once the sentencing hearing is over, whatever that may mean. And the plain, most reasonable meaning of, quote, imposed, unquote, I would suggest, means when the judge says what the sentence will be. Counsel, is that true even if the sentencing proceedings have not concluded? That is, if the sentencing proceedings have not been adjourned? Yes, Your Honor, it is. And the reason it is, is I think you have to look at the plain language of the statute. And the statute doesn't say when the sentencing proceedings are over or when the sentencing hearing is over. It says when the sentence is, quote, imposed, unquote. There's also some plain language that's, I think, significant in Rule 32J, which I note in my brief. That suggests that there's a line during the sentencing hearing. There's two things that happen during the sentencing hearing. One is the defendant is notified of his right to appeal. And that, under the plain language of Rule 32J, comes, quote, after sentencing, unquote. And here, of course, Judge O'Neill had, in fact, gotten to the point and gotten through the process of advising the defendant, Ms. Roach, of his notice of right to appeal. So I think you have here, under the plain language of the rule, a sentence that was imposed, then something happened that the judge didn't like, and then he wanted to make it higher. But this doesn't make it higher. But let's just talk a little bit about that. What happens, then, if something even a little bit more extraordinary than this happens? So find out that the judge made a mistake, or let's say the defendant, instead of laughing, said, well, thank you, Your Honor. I appreciate that you gave me a break. I'm going to go out and kill that person. There's the judge's limited. Correct, Your Honor. That's the same way that if the defendant – I'm sorry. Did I interrupt? Well, you say, I'm going to, you know, go out on that earlier day and show you how much I don't care for this or whoever, and just, you know, go out and violently rape somebody. The judge is limited? Why shouldn't we look at the Fifth and Tenth Circuits, Rule 35? First of all, let me step back to Your Honor's question, and then let me talk about the Fifth and Tenth Circuits. First of all, the problem Your Honor just posed is going to exist anyway, because the defendant could go back to the jail, write a letter saying the same thing, and then everyone agrees the judge couldn't change it. Yeah. But Rule 35, you know, it's – when sentence is imposed, there's no particular end to that imposition timeframe. It's, I guess, open for interpretation. You're asking the Court to narrowly interpret that, and I'm just trying to figure out why we wouldn't go with what the Fifth and the Tenth Circuit have said, because doesn't that take in the practical realities of what happens? I don't think so, Your Honor. I'm asking the Court to focus on the word imposed and interpret that word. The Fifth and Tenth Circuit cases don't discuss that language at all. The Fifth and Tenth Circuit cases on their facts are all totally different and totally consistent, could still happen under the rule I'm proposing. In the Mesa case, it was really just an application of what they call the sentencing package rule. The judge didn't make the total sentence any higher. He just adjusted things when an obvious error was pointed out. In the Tenth Circuit case of Luna Acosta, the Court said, and I think rightly so, that the sentence hadn't been finished being imposed, because the judge was still doing the supervised release term when things got halted and then put over for further consideration. Are you aware of the First Circuit case, United States v. Burgas-Ondehar? Yes. What about that one? In that case also, Your Honor, the sentencing had not been completed. The Court made the point very strongly that the defendant was still in the middle of her allocution. And so what the judge had said, and this is also consistent with Ninth Circuit case law that I cite in my brief, what the judge had done was simply state a tentative sentence that was open to further consideration after the defendant finished her allocution, which is what happened. The Gerozano, I forget the last name, the second name of the defendant in that case, the Gerozano Fifth Circuit case I think is really interesting also, Your Honor, in two respects, and please do look at it, because it goes to our second issue as well as our first. In Gerozano, the Court, I think, found itself stuck. In Gerozano, the judge got insulted during the sentencing as she was pronouncing supervised release and said, I'm going to increase it from 71 months to 108 months. And the Court was stuck with Mazet, but it really wasn't stuck with Mazet because the judge was still in the process of citing the terms of supervised release. So the sentencing had not been imposed, the sentencing process had not been completed. But Gerozano is really interesting, Your Honor, because the facts are similar to this case. And even though the Gerozano panel was stuck with the Mazet decision, the Gerozano panel then went on to substantive reasonableness. And it recognized, I think, very reasonably that it's not reasonable for a judge in that case to increase the sentence by a third just because of disrespect to the court. So you get to your reasonableness. How about could the judge then – the judge would be limited then also under your rationale or argument from decreasing the sentence? That's correct, Your Honor. That's correct. And that was what Luna Acosta was about, but in Luna Acosta, the sentencing process had not been completed. I'm not asking for some special preference here for defendants. I mean, it cuts both ways. But you have to draw a line. You know, the fifth – Exactly. We have to draw a line. And I'm just trying to figure out why we would impose a definition from Rule 32 onto Rule 35 in drawing the line when Rule 35 says that the definitions are limited to Rule 35. Actually, I'm looking at Section 18 U.S.C. 3582C. That's the real statutory provision here, Your Honor. It uses the word imposed. So you have to look at the word imposed. It does not say when the sentencing hearing is over. You know, I think there's just as much of a – But we still have to interpret what does imposed mean. Correct. And we're still drawing a line in terms of at what point has the sentence been imposed. I think the plain meaning of imposed means when the judge says what the sentence is. It doesn't mean that what – Well, two things, Your Honor. First of all, the remarks that come after he says what the sentence is doesn't mean the sentence is being changed. Second of all, I'm not saying judges can't tentatively state a sentence, but there's a clear line when the judge starts notifying of the right to appeal. You know, Mesa, the test under Mesa – What if the judge says you have the right to appeal before – what if that's the first thing that the judge says? Well, then I think you have a problem, because the judge has done things in an order that's not consistent with the rules, and that's a problem that's not presented in this case that you'd have to then resolve when it was presented. I – the Mesa case doesn't draw a line any more effectively. You know, the language in the Mesa case, they talk about – they distinguish another case based on – and I wrote this down, Your Honors – based on – when the judge gaveled the hearing adjourned. I assume that doesn't mean the judge has to use a gavel, but what – does it mean the judge has to say the word adjourned? Does it mean the defendant has to leave the podium? Does it mean the defendant has to go outside the courtroom? You have the same line-drawing problem under the Mesa approach. Under our approach, at the very least, you were saying we're going to focus on the language of the rule. Imposed cannot mean just when the defendant leaves the podium, I would suggest. Well, but most judges know when a hearing is concluded, they get up and leave the bench. Well – And the hearing is over. Why wouldn't that be reasonable to use as the point at which the sentencing hearing has concluded? Actually, I don't know. It depends on the judge. In Los Angeles, Your Honor, it's not, because the judge stays on the bench and starts hearing another case. Well, that's true. So is it when the defendants cross on their way to and from the podium? Is it when the judge says, you know, goodbye, and the defendant starts to walk away? I see I'm running out of time. When the judge files the next case, that's an indication that the prior case has concluded. That is, but is it enough when the defendant walks away from the podium and he hasn't actually called the case yet? Is it one step? I mean, you have the same line-drawing problem, Your Honor. The line-drawing in – I'm sorry, Your Honor. Counsel, do we really need to get to that issue? Could we not just look at whether or not the judge appropriately considered the 3583 factors and did not consider the 3553A factors? The respect for the law, wouldn't that be a basis for a remand and a reversal, just merely on that, without having to decide when a sentence is announced or pronounced or has ended? I think it would be, Your Honor. And even more, please do look back at the Gerozzano case from the Fifth Circuit. They did exactly that. They focused instead on substantive reasonableness. And they said it's not reasonable for a judge to say, I'm going to give you three more years because you were disrespectful to me. I submit it wasn't reasonable for the judge here to say, I'm going to double your sentence because you laughed at me. Really, I think you laughed at me because how do we really know what a person is laughing at when they laugh? So I definitely would urge Your Honors to look very carefully at substantive reasonableness. It is a way to avoid this more complex – I don't think it's that complex, obviously, from the way I'm arguing statutory interpretation. But, Your Honor, I think that's totally correct. And there is the issue here. Is promoting respect for the, quote, system, unquote, really any different from promoting respect for the law? Gerozzano, the language the judge used was, you're disrespecting the court and I'm the law. And so that was disrespecting the law. I think here the system is the law, but – All right. Thank you, counsel. You've used your time. We'll give you one minute for rebuttal. Thank you. Good morning, Your Honors. Karen Escobar on behalf of the United States. I handle the proceedings in the district court as well as the underlying criminal case. I think that the judge exercised his discretion in an appropriate manner here. The district judge is entitled to have maximum latitude to consider all factors, the totality of circumstances, in fashioning an appropriate sentence for a supervised release offender. Counsel, could you please discuss the substantive reasonableness of this sentence? Your Honor, he was not punished for laughing. The defendant was punished for an attitude. An attitude is the most important factor to consider in assessing whether or not an offender can benefit from supervised release. This judge at the outset – and Judge O'Neill is a very experienced district judge. He's been a judge for at least 24 years. This judge at the outset expressed dissatisfaction with the probation officer's recommendation to sentence to a year and a day. But he nevertheless imposed that sentence after considering all of the factors. Well, and that's one reason we're here. It was an initial formulation. It was not the final sentence. And we believe that the court is to look at the – it was a single proceeding, Your Honor. We have to look at the practical reality of sentencing revocation or supervised release offenders. But would you agree that if the judge had not perceived that the defendant was laughing, that the sentence imposed would have been a year and a day? Had that conduct, had that attitude that was expressed in the middle of rendering sentencing not occurred, perhaps we would not be here. But if it had not occurred, would you agree that the sentence imposed would have been a year and a day? I think that would be the case, Yes, Your Honor. That's what the record reflects. Yes. I think that would be the case. So how do you argue that it comes under 3553a? I wonder what it means. Again, it's looking at the context and fashioning an appropriate sentence for a supervised release offender. The court is to look at the attitude. And the court said, you make your choices. We respond to them. That's what he said in the record. And that is what the court is entitled to do in fashioning an appropriate sentence for a supervised release offender, looking at the attitude. Could that person benefit from supervised release? And here the court concluded the defendant was not receptive to changing his attitude to being rehabilitated. The fact that the court advised the defendant of his appellate rights is irrelevant. Rule 32J, which defense is relying upon. Well, counsel, but didn't the court specifically state that he was relying upon the 3553a factors even before the laughter? So why was the court referring to 3553a and talking about respect? And is that appropriate? Well, he was considering 3553a factors and imposing sentence. However, he had not rendered an ultimate sentence. We agree with the Fifth Circuit. It would be the court would be imposing a draconian rule to require the district judge or to consider that the district judge loses jurisdiction immediately, instantaneously, when he imposes an initial sentence. The sentence imposed was outside the guideline range to begin with. The guideline range was up to 12 months, and he ordered 12 months and a day. So right there, there's a variance. But my understanding is that the defense did not object to that because, really, 12 months and a day is less than 12 months. Right. But he's talking about 3553a instead of 3583e. And so I'm wondering if even from the beginning, before we even get to the laughter, if he should be talking about respect. And then when the laughter happens, then, of course, it's very clear that he's upset about the disrespect. And, again, there's a variance up to 24 months. And the reason the only reason articulated for the variance is the respect for the system and that he won't learn without getting the maximum. Right. And, again, we're looking at the context. The context of the purpose of the supervised release revocation proceeding is to fashion an appropriate sentence to address the breach of trust that has occurred. The Court has placed its trust in the offender, in the supervised release violator, to abide by the conditions of release. Here, the defendant exhibited completely disrespectful conduct, ignored all of the conditions of release, not just from the outset when he was placed in RC, the very first day in Bakersfield, and then when he was placed again in Fresno. I'm not talking about factually. I'm talking about legally. Can the Court consider respect for the law when he's sentencing someone for a supervised release violation? Well, the Court did not reference respect for the law. The Court referenced respect for the system. The distinction is somewhat subtle, but respect for the system is exactly what the Court is to consider in addressing or sanctioning the breach of trust that has occurred. The Court was not punishing the defendant for laughing. The Court was punishing or was sanctioning a behavior. Punishment is not even in the vocabulary. The mindset of the judge is to address the attitude. Was this defendant capable of benefiting from supervised release? Judge O'Neill concluded at the end of the hearing, after this prolonged discussion of respect, there was this dialogue during the court proceeding between the court and the defendant, and the court also specifically asked the probation officer what constituted disrespect, and the probation officer was very strict. The judge was never going to provide supervised release after the term. The term was either 7 months according to the initial offer that was not accepted right away, or 12 months and a day, which was the recommendation of the probation office, both of those terms included a no further supervision to follow. So that was the clarification asked of the judge, was do you mean that the – will supervision terminate at that point? And the court said, yes, supervision, and then that's when he says, do you think that's funny? So he's already said there was not going to be any continued supervision after the term of 12 months and a day. Actually, the judge answered that question after the laughter and said, to answer your question, counsel, yes, it will terminate. No, that's later. That's on page 13 of the transcript. Page 12 of the transcript is before where he says, anything else? And then Mr. Beschwitz says, will supervision terminate at that point? And the court says, yes. Supervision, and then it says, dash, dash, do you think that's funny? No way. What is the laughter about? I'm just surprised. That's when the colloquy about the laughter starts. Before that, he's already indicated that he agreed with the recommendation of 12 months and a day with no supervision to follow. But then the court is not required to have blinders in the situation that Judge Murguia was referring to. The court is not blind, and the court can evaluate the conduct, the attitude. If the flip situation occurred, say a female defendant was before the court and the judge imposed a sentence of two years, and the female defendant starts crying and is expressing remorse and refers to young children, and the court imposes a lower sentence of a year, we wouldn't be here today. The court, the proceedings do not stop. This was a single sentencing proceeding. Harazano-Rosales, the case relied upon defense out of the Fifth Circuit, is distinguishable. It is not a supervised release violation, and there was no evidence of disrespect in that case. That case was remanded because the defendant questioned the court in imposing sentence, did not exhibit disrespectful conduct, at least according to the concurrence. In the end, what is important is the attitude of the offender. And that's what the judge was addressing. When the judge specifically stated, you make your choices, we respond, that is within the discretion. The court did not abuse its discretion in evaluating all circumstances, the totality of the circumstances, the 3553A factors bearing on history and characteristics of the defendant, his conduct. Could he benefit from supervised release? No, the court concluded. The court was reluctant at the outset to adopt the probation officer's sentencing recommendation. And after evaluating all circumstances during this single proceeding, the court was well justified in imposing the maximum sentence. So we'd ask the court to affirm the sentence, allow the district judge to properly consider all factors, including conduct and attitude, which is the most important factor in assessing breach of trust and the trust that is placed in a supervised release. So what was the violation exactly? Because in this transcript, it only has the sentencing without actually saying what the defendant was admitting to. What was the violation? It's failure to participate in the reentry, residential reentry center program following its rules. And there were several instances of conduct which were set forth in the petition for supervised release conduct. The fact that the very first day he was placed in both centers, he would not follow rules. There was some discussion in the ‑‑ at the sentencing proceeding what it was. And the defendant said, well, I didn't want to do the work of one of the staffers. The staffer had asked to clean up something or to take the ‑‑ To move a mattress and sheets. Right. He said, right, it's your job, not mine. Exactly. Exactly. And then the probation officer elaborated on it, the fact that he used profanity and used cuss words and things like that. And then he hung up on her when she was trying to get to the bottom of it, and he said he was going to leave the program. During the time that he was in there, he possessed a pocket knife. He tested positive. There was a positive breathalyzer for alcohol. He also ‑‑ he was not violated for this, but it was referenced during sentencing. Well, if he wasn't violated for it, then is it reasonable for him to have a 24‑month sentence for the language and for the attitude that he had at the halfway house? It is relevant conduct, yes. It's appropriate for the court to consider. And it goes to the proper permissible 3553A factors the court was to consider, history and characteristics of the defendant, and also to prevent and protect the public from further crimes of the defendant. All right. Thank you. Thank you, counsel. We did see your time. Rebuttal? Counsel, this case is before us on plain error review. Would you agree? The legal issue is not, but the reasonableness of the sentence, is it plain error review? No. Plain error review would be the considering respect for the law as a factor.  And then, of course, the jurisdictional issue is reviewed de novo. But there was no objection made to the sentence imposed, was there? No. But the Barragan case that I cite specifically says even if there's no objection to the courts not having jurisdiction to change the sentence, it's reviewed de novo. I agree. But the extent to which the sentence was changed, the actual sentence imposed, and whether or not it was reasonable, what would be the standard review for that question? It's just the cases don't really set out a standard of review for that. They just say it's reviewed for substantive reasonableness. So it's a little bit of both. Even if there's no objection, it's not plain error review if there's no objection to the sentence imposed? That's my reading of the case, Your Honor. It would be plain error review as to the propriety of considering respect for the system or respect for the law. I did want to, you know, my colleague says he wasn't punished for laughing. Well, Your Honors can read the transcript. Everything else that the judge had before him except the laughter was a year and a day. The laughter made it two years. I think it's pretty clear. They say there wasn't an – it was just an initial formulation of the sentence. Read the transcript. That was a sentence. You know, Your Honors can avoid the legal morass, as Judge Navarro suggested. You can avoid it by going to substantive reasonableness just the way the Gerozano Rosales case did. That's the way they ended up resolving it. The district court made a finding there that the defendant was being disrespectful and the majority of the panel upheld that finding. So you have a case there where the defendant was being disrespectful just as he was, I'll say, possibly being disrespectful here. It's awfully awful. There have been times, Your Honors, when I thought I was being laughed at and I was probably misreading people. It's an easy thing to happen. So you not only have, is it okay to double a sentence for someone laughing at the court, but the sort of inexactitude of judging just what a person is laughing at. I don't think there's a question that there was laughter. The issue was what was the intent of the laughter. Correct. And I don't know whether – and we don't know from the record whether it was a little chuckle or a loud – you know, we don't know the nature of the laughter, but yes. But the bottom line, Your Honor, is it's just – our system of justice should not have someone getting an extra year in prison, having their sentence doubled, because even if they did laugh at the judge, that's not what we're about. We're about giving people sentences for all the factors in 3553A to the extent they're incorporated into 3583E. And that's not whether the judge got laughed at. It's whether someone's going to go out and commit more crimes. It's whether or not they – you know, that kind of thing. But this isn't why a person should get two years in prison instead of one. The one last thing I wanted to ask, obviously I am hopeful Your Honors will reverse. If you do reverse, please do be aware that Mr. Ochoa would be getting out within a month or so if the sentence were to be reinstated or there were to be resentencing potentially. So I'd only ask that the Court, if it so – If you know what we do, do it quickly, you know? Yeah, that's right. Thank you. If you're not going to reverse, I guess it doesn't really matter. Obviously, I hope you will. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Navarro, Rawlinson, Murguia